**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal Case No. 18 CR 351 (ABJ)** |
| | : | |
| **ETHAN MOYE-GORDON** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its memorandum in aid of sentencing.

**I.      Factual Summary**

On July 1, 2019, Defendant Ethan Moye-Gordon pled guilty to count one of the indictment, charging Kidnapping, in violation of 18 U.S.C. § 1201(a)(1), arising from an armed abduction that began in the District of Columbia and continued into Maryland on November 10, and November 11, 2018.   The defendant accepted a factual proffer in support of his guilty plea that included the following facts:

1.       On or about November 10, 2018, and into the early morning hours of November 11, 2018, the Complainant, Carlos Santos, was walking in Northwest Washington, D.C., near Logan Circle, when Defendant Ethan Moye-Gordon, acting in conjunction with two other male suspects, approached the Complainant at gunpoint and forced him into an Audi sedan.

2.       During the course of the abduction, the Complainant advised that one of the suspects was brandishing a firearm.

3.       The Complainant reported that at some point during the early morning hours of

1

November 11, 2018, he was forced from the rear of the vehicle into the trunk. While inside of the trunk, the Complainant was able to pull the latch in the trunk and roll out of the vehicle, but was unable to obtain help before the suspects recaptured him. The defendant has no recollection of the Complainant being forced into the trunk.

4.      The Complainant was then assaulted and punched in the face, causing injuries to the complainant's mouth, face, head, and arm. The Complainant was then forced back into the rear of the vehicle.

5.      The Complainant, who had been forced by his abductors to drink most of a bottle of Hennessy, fell asleep at some point during the abduction, and awoke in the 1900 block of Savannah Terrace, Southeast, Washington, D.C., at approximately 7:30 a.m. on November 11, 2018. A concerned citizen contacted the police for emergency assistance. The Complainant was transported to George Washington Hospital where he was treated and released for injuries to the mouth, face, and arm from the assault.

6.      During the abduction, the suspects accessed the Complainant's Apple iPhone 10 XS cellular telephone and used online banking applications to access the Complainant's bank accounts and withdraw and/or transfer money from the Complainant's accounts. During the course of the kidnapping, the suspects took items from the Complainant including his Apple iPhone 10 XS, Leica M camera (Leica M240), Leica Noctilux-M 50MM f/1 6-BIT E60 lens, Seiko Brightz SAGA035 blue titanium watch, Bank of America debit card, and Capitol One Business Card.

7.      The suspects forced the Complainant at gunpoint to provide his PIN code to his bank and credit cards. The suspects obtained approximately $2,696.47 from the Complainant's

Bank of America account, in cash and merchandise. During the kidnapping, the Complainant was also forced to call Bank of America to increase his withdrawal limit from his Bank of America debit account.    The suspects made a number of transactions while transporting the Complainant in the vehicle.

8.      These transactions include, but are not limited to, transferring funds from the Complainant's account to SQC*JUGGKING MOONY; withdrawing cash from the Lowest Price Gas Station ATM in Capitol Heights, Maryland; withdrawing money from the Complainant's account at the Citgo Gas Station located at 3020 Minnesota Avenue, Northeast, Washington, D.C.; withdrawing funds from a Bank of America ATM; and withdrawing funds from an ATM in a 7-Eleven Convenience Store.

9.      Defendant Moye-Gordon can be observed on surveillance footage from the Bank of America ATM and in surveillance from the 7-Eleven Convenience Store, using the Complainant's debit cards while the Complainant was being held at gunpoint in the Audi. In addition, while the Complainant was being treated at George Washington Hospital, the suspects made several purchases at Frank's Tavern Liquors located at 1701 Kenilworth Avenue, Capitol Heights, Maryland. Video footage from Frank's Tavern Liquors at approximately 10:10 a.m. shows the Audi, parked in the parking lot, and one of the suspects going inside of the liquor store located at 1701 Kenilworth Avenue, Capitol Heights, Maryland.

10.     On November 11, 2018, at approximately 10:40 a.m., Defendant Moye-Gordon and two other individuals (Raquan Zimmerman and Da'wan Salters) were stopped in the silver Audi used during the abduction in Arlington, VA, during an unrelated traffic stop.

11.     During a search of the Audi and the occupants, Arlington County officers

recovered a Bank of America Visa debit card in the Complainant's name, several iPhone cellular phones, and bank cards and identification cards belonging to several different people. On November 30, 2018, law enforcement obtained a search warrant for the vehicle and recovered additional items from the vehicle, including the Complainant's camera from the trunk of the vehicle, and property belonging to several other victims of robberies that had occurred on November 11, 201

12.     Defendant Moye-Gordon has reviewed the   discovery   provided   in   this case.   Defendant Moye-Gordon has no information or evidence that any of the statements or allegations contained in the discovery are not true. Additionally, Defendant Moye-Gordon has no information or evidence that any individuals identified in the discovery were not involved in the conduct described in the discovery.

<u>Additional Conduct Resolved Pursuant to Plea Agreement</u>

As part of the plea agreement, the government agreed not to charge Defendant Moye-Gordon for his involvement in two enumerated offenses that were identified during the course of this investigation.   *See* Plea Letter ¶ 3.   Those offenses include:

- a November 11, 2018, Assault and Robbery (CCN 18-191-700) (complainant captured in footage from Wells Fargo); and

- a November 11, 2018, Armed Robbery (CCN 18-191-728) (that occurred in the 2100 block of 8th St. NW).

The facts and circumstances of each of each offense is detailed below.

<u>November 11, 2018, Assault and Robbery</u>

When Defendant Moye-Gordon and the two individuals in the silver Audi were arrested in Arlington, Virginia, they had multiple credit/debit cards of other individuals.   One of the cards bore the name of an individual who was robbed and assaulted in the early morning hours of November 11, 2018 (Victim #2), in the U Street area of D.C.   Victim #2 stated to law enforcement that his recollection of the offense was "hazy" due to a head injury and his level of intoxication, however, he recalled that he tried to intervene when he thought two suspects tried to take a man's wallet. Victim #2 remembered being inside somewhere and the suspects demanding he give them the PIN to his debit card.   He then remembered waking up in the hospital after being assaulted. He believed the suspects took his wallet which contained his ID, two credit cards, one debit card, and $15.   Video footage from the Wells Fargo where Victim #2's credit card was used shows two suspects, who are later joined by Defendant Moye-Gordon. During the video footage, it appears that Moye-Gordon goes into Victim #2's pockets.   Victim #2's credit and/or debit card was later found inside of the vehicle with Defendant Moye-Gordon and his two associates when they were stopped in Arlington, Virginia (in close temporal proximity to the offense).



<u>November 11, 2018, Armed Robbery</u>

On November 11, 2018, at approximately 3:56 a.m., law enforcement responded to the area of the 2100 block of 8th St. NW, Washington, D.C.[1]   Victim #3 and Victim #4 reported that they were approached by three black males, one of whom was armed with a handgun.   They were told to get on the ground.   The three suspects then stole property from Victim #3 and Victim #4, to include: Victim #3's iPhone 7 , wallet, keys and $80.00 in cash, and Victim #4's Galaxy Android, keys, camouflage Oakley backpack, and $132.00 in cash.   Victim #3 provided a description of one of the three suspects wearing a red Helly Hansen smock-style jacket.   The video footage from the Wells Fargo[2] (screengrabs are included above) captures Defendant

---

[1] This location is a short distance from the location of the offense involving Victim #2 (captured in the Wells Fargo footage).

[2] Law enforcement had not obtained the Wells Fargo footage capturing Defendant Moye-Gordon at the time that Victim #3 provided the distinct clothing description.   Victim #3 and Victim #4 were shown photo arrays that contained Defendant Moye-Gordon, however neither victim were able to identify him in the photo arrays.

Moye-Gordon wearing the distinct red Hellly Hansen jacket described by Victim #3.   After the stop of the Audi, Arlington County Police recovered a wallet belonging to Victim #3 in the vehicle. Contents of the wallet included a license belonging to Victim #3, a medical card, and 7 of Victim #3's credit cards. Additionally, law enforcement has identified at least one of the phones recovered from the Audi as belonging to one of the victims in the 8th St. NW armed robbery (Black iPhone - 35533081624712).

### II.      Sentencing Factors

When determining the appropriate sentence, the district court should consider all of the applicable factors set forth in Title 18, United States Code, Section 3553(a). See United States v. Gall, 128 S. Ct. 586, 596 (2007).   Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in Section 3553(a). United States v. Rita, 127 S. Ct. 2456, 2463-65 (2007). The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the purposes of the statute; (3) the kinds of sentences available; (4) the sentencing guidelines; (5) policy statements; (6) the need to avoid unwarranted sentence disparities; and (7) the need to provide restitution to any victims.

1.  Statutory Penalties and the U.S. Sentencing Guidelines

The offense of Kidnapping, in violation of 18 U.S.C. § 1201(a)(1), carries a maximum sentence of imprisonment for any term of years or for life; a fine of not more than $250,000; and a term of supervised release of not more than five years.   The base offense level is governed by U.S.S.G. § 2A4.1(a) (32 points).   That base offense level is subject to an additional two-point increase based on specific offense characteristics (use of a dangerous weapon). U.S.S.G. §

2A4.1(b)(3).   The total offense level for the offense is 34 points.   With acceptance of responsibility, under U.S.S.G. § E1.1(a) and (b), this score is reduced by 3 points, resulting in a total offense level of 31.   *See* PSR ¶¶ 32-33.

The Presentence Investigation Report calculates that Defendant Moye-Gordon has a criminal history score of 2 that places him in Criminal History Category II.   *See* PSR ¶ 39.[3] Under the Guidelines, Defendant Moye-Gordon is subject to a range of 121-151 months on Count 1 (Offense Level 31, Criminal History Category II).   *See* PSR ¶ 87.

As part of the plea agreement, the government agreed to allocute at the low-end of the defendants' guideline range.   *See* Plea Agreement, ¶ 5.

2.   <u>Argument</u>

First, the nature of this offense is serious.   The victim was subject to a harrowing night where he was held captive for hours, forced into the trunk of the vehicle, and assaulted after he attempted to escape from the vehicle.   During the course of the night, the victim did not know if he would survive and live to see his family.   The defendant and his associates could simply have robbed the victim, taken his credit cards, and left the victim unharmed; instead, they held the victim captive over the course of night, inflicting psychological harm over the victim.

The victim has provided a victim impact statement, detailing how the defendant's actions affected him.   *See* Exh. A (Victim Impact Statement of Carlos Santos).   As Mr. Santos states, this horrific incident impacted not only him, but also those around him:

> This "night of fun where we kidnap, terrorize and rob a random scientist" impacted my friends, colleagues, and my entire family (thankfully my

---

[3] The plea agreement had estimated the defendant to have a Criminal History Category of I, but an additional conviction was discovered by the PSR writer that increases the defendant's criminal history score to Category II.

> children are too young to remember, but my wife is not).    My wife had been on the phone with me shortly before I was abducted, and she was terrified when I called early the next morning from a hospital bed, as we live halfway across the country, and she could not immediately come to see me.    Also traumatized were my parents, my brother, my extended family, my colleagues, my friends, and my employees.    As the founder and CEO of my small, 8-person biotechnology company, had something happened to me, it is likely that our company would have never recovered, and may even have eventually shut down . . .    This could have cost my employees their jobs and most importantly robbed our patients of the many years of painstaking progress and advances we have made in developing treatments for their disease.

*See* id. at 2.

In his victim impact statement, Mr. Santos also aptly describes the senselessness of this crime and how very unnecessary it was for the defendant and his associates to treat Mr. Santos the way they did.   *See* id. at 3.   Despite all the harm that the defendant has caused to Mr. Santos, he nonetheless expresses compassion for the defendant and the defendant's family (who will also be impacted by the defendant's actions).   *See* id. at 3.   Although it is clear that the defendant and his associates were not thinking about the people who they were repeatedly victimizing, hopefully, as Mr. Santos suggests, the defendant will take time to reflect on what he has done and how much harm his actions have caused.

It is highly concerning that hte conduct in this case was not simply a crime of opportunity, but instead was part of an ongoing course of conduct.   Evidence on Defendant Moye-Gordon's phone demonstrates his plan to prey upon victims in the U Street corridor (in many cases targeting individuals who were intoxicated to rob them).   *See* Exh. B (defendant's outgoing text explaining he's been up on U Street because he "had to jugg"); Exh. C (internet searches on defendant's phone for U Street robberies); Ex. D (exchange of messages where defendant tells individual he's been "jugged").

Defendant Moye-Gordon made it his full-time job to "jugg" people; an identity he was so proud of that he held himself out as a "jugg king" on social media.   This dangerous behavior has unfortunately grown as a trend across the country.   *See, e.g.*, Joel Eisenbaum, "'Jugging' Crime Trend   on the Rise in Houston," November 6, 2013, *available at* https://www.click2houston.com/news/jugging-crime-trend-on-the-rise-in-houston_20151124020204633 (describing rising trend of "jugging"); K. Query, "Oklahoma City Police Warning Citizens About 'Jugging' Crime Trend," July 11, 2019, *available at* https://kfor.com/2019/07/11/oklahoma-city-police-warning-citizens-about-jugging-crime-trend/ (same); Jeff Paul, "'Jugging' Crime Trend on the Rise in Carrollton," September 14, 2016, CBS DFW, available at https://kfor.com/2019/07/11/oklahoma-city-police-warning-citizens-about-jugging-crime-trend/ (same); Jay R. Jordan, "Police Asking for Help in 'Bank Jugging' Case," February 10, 2016, available at https://www.chron.com/neighborhood/woodlands/news/article/Police-asking-for-help-in-Montgomery-County-9692150.php (same).

Defendant Moye-Gordon's ongoing course of conduct is evident from what law enforcement has learned of from the events of November 10 and November 11, 2018, alone.   As described above, during the course of this investigation, law enforcement learned of at least *three additional victims* who were preyed upon in a similar fashion during the same timeframe.   Mr. Santos was not the defendant's first victim, and he wouldn't have been his last victim, had Arlington County not stopped the Audi after the kidnapping and caught the defendant with proceeds of the robberies described above.

The defendant's conduct during the kidnapping further evidences the fact that this was not his first time engaging in such behavior.   For instance, the defendant forced the victim to call his bank to increase his withdrawal limit and the kidnappers added their names to the victim's accounts (so they could continue to victimize him).   Although the defendant comes before the Court with only two criminal history points, it is highly concerning that his prior contacts with the criminal justice system have quickly escalated from more minor offenses, to violent felonies and offenses that involve firearms.   To the extent that Defendant Moye-Gordon may argue for leniency based on a limited criminal history, it is the government's position that his criminal history score, if anything, substantially underrepresents his prior criminal conduct.   Although the defendant has no prior convictions for offenses involving firearms, there were numerous photographs of the defendant with firearms on his phone, including images that were taken close in time to the charged conduct:



IMG_0302.HEIC (file create date of 11/6/18).



IMG_0296.HEIC (file create date of 11/5/18)



IMG_0298.HEIC (file create date of 11/5/18)





(Photos posted to Facebook with firearm with extended magazine and laser sight).

The government recognizes that the defendant has faced many challenges in his life and had a difficult upbringing; however, robbing, assaulting, and terrorizing innocent members of the community is not an acceptable response to those challenges.   A downward variance is not appropriate here, as the guidelines range in this case already accounts for the fact that he has had limited prior contacts with the criminal justice system (had he been in Category IV or V, his range would be beginning at 151 or 168 months, respectively).

Moreover, a guidelines sentence is appropriate here, because the defendant is also receiving the benefit of resolving two additional offenses by entering a guilty plea (the two cases described above, involving Victim #2, Victim #3, and Victim #4).   Those two additional offenses involved serious conduct (including a firearm being brandished with Victims #3 and #4), and Victim #2 being physically assaulted (like Mr. Santos) during the offense.

The government credits that the defendant has desired to take responsibility in this case and enter a guilty plea; however, he has continued to minimize his involvement.   For instance, one of the more harrowing aspects of the kidnapping involved Mr. Santos being forced into the trunk of the vehicle, escaping from the trunk, and being forced back into the vehicle.   As part of the Statement of Offense, additional language was added that "[t]he defendant has no recollection of the Complainant being forced into the trunk."   The victim's DNA was later recovered on the pull handle in the trunk of the vehicle (that he pulled when he attempted to escape from the trunk), evidence that strongly corroborates the victim's account of the kidnapping.   The defendant's memory lapse with respect to this particularly harrowing aspect of the offense may suggest he has not fully accepted responsibility for his actions during the kidnapping (his underlying actions of

being able to change passwords on accounts and withdraw large sums of money, as well as his communications on his phone during the kidnapping, as well as his conduct during the interview that occurred after the vehicle was stopped, contradict any suggestion that he was so intoxicated during the kidnapping that he could not recall what occurred).

### III.    Conclusion

For the foregoing reasons, the government recommends that the Court sentence the defendant to a sentence at the low end of the Guidelines range:   121 months of incarceration, to be followed by a term of 5 years of supervised release.   The government submits that a sentence of 121 months of imprisonment is an appropriate sentence, which serves to protect the community, punish the defendant for his criminal conduct, and deter others from committing similar offenses, while also affording the defendant an opportunity at rehabilitation.   The government further requests the Court the defendant to pay restitution to the victim.   The government submits that a sentence of 121 months of imprisonment serves the interests of justice and appropriately balances the sentencing factors under 18 U.S.C. § 3553(a).

Respectfully Submitted,
JESSIE K. LIU
UNITED STATES ATTORNEY


BY:    _____/s/_____
       Laura Crane
       D.C. Bar 992454
       Assistant United States Attorney
       555 Fourth Street, N.W.
       Washington, D.C. 20530
       202-252-7667
       *Laura.crane@usdoj.gov*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel Howard Katzoff, via the electronic case filing system, this 27th day of September, 2019.


_____/s/_____
LAURA CRANE
Assistant United States Attorney