**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES** | : | |
| | : | |
| **v.** | : | **CRIMINAL NO. 18-351 (ABJ)** |
| | : | |
| **ETHAN MOYE-GORDON,** | : | |
| **Defendant** | : | |
| | : | |

## DEFENDANT'S MEMORANDUM IN AID OF REVOCATION SENTENCING

Defendant, Ethan Moye-Gordon, through undersigned counsel, respectfully submits the following memorandum addressing his sentencing recommendation for his upcoming hearing on violation of supervised release. In support of this memorandum he incorporates and adopts his letter to the Court [ECF 62], and submits a number of letters and certificates relating to his accomplishments while he was pending sentencing. [*See* Exhibit 1]

## RE-ARREST VIOLATIONS AND REVOCATION SENTENCING BACKGROUND :

Mr. Moye-Gordon pleaded guilty to the following offenses in the District of Columbia Superior Court: 1) leaving after colliding; 2) carrying a pistol without a license; and theft and credit card fraud. Leaving after colliding appears to be a Grade C violation, and the other offenses are Grade B violations. [1] Mr. Moye-Gordon has a final hearing on violation scheduled on November 9, 2026. According to the Probation memorandum, Mr. Moye-Gordon's guidelines for the violations is 4 to 10 months imprisonment, based on his Grade B violations and criminal history category I.

Mr. Moye-Gordon was sentenced in his re-arrest matters on July 21, 2026. For the firearm offense, he was sentenced to 18 months, with all but 14 months suspended, and one year of supervised probation. The prison sentence was consecutive to the other sentences, but the

---

[1] The most recent Probation 12A memorandum form counsel received was on February 2, 2026.

probation is to run concurrently to the other cases. For the theft and credit card offenses, he received 14 months and 5 months, respectively, suspended as to all but time served, followed by 1 year of supervised probation. The theft and credit card sentences are concurrent to each other, but consecutive to the firearm and leaving after colliding sentences, except that the one year of supervised probation is concurrent with the other cases. For the leaving after colliding, Mr. Moye-Gordon was sentenced to a 90 day suspended sentence followed by 1 year of supervised probation, and again the probation is concurrent with the other matters. Mr. Moye-Gordon is currently serving his sentence at FCI Allenwood, and his current release date is May 27, 2027.

Mr. Moye-Gordon wrote to the Court expressing his remorse, and asking for leniency in light of the difficult circumstances he was forced to address, including the death of his mother while he was in prison, and also the arrest and incarceration of the mother of his two sons in August 2025. [See ECF 62 ] Since his mother had passed, when he returned from prison he did not have a place to call home, so he tried to live with the mother of his children while he regained stability. Unfortunately, in August 2025, she was arrested and detained, leaving him without a place to live, while at the same time leaving him to assume responsibility for his two sons. [2] The responsibility was far too great, and sadly he did not have either family or community to support him through the ordeal. He was able to find work with a carpentry business, but work was limited. Therefore, in addition to not having a steady roof over his head, it was extremely difficult to try to support himself and his sons. Without family or available community services, he was forced to stay at a shelter or with friends, which was very unsettling and extraordinarily difficult for him. He did the best he could to try to juggle his responsibilities

[2] The sons' mother has been in the custody of the D.C. Department of Corrections since August 21, 2025, pending trial for Assault With a Deadly Weapon in Case No. 2025-CF3-9881.

and keep a roof over his head, but sadly he recidivated, leading to his arrest, new convictions, and these revocation proceedings. [3]

In counsel's conversations with Mr. Moye-Gordon, he acknowledges that he must put the work in to become self-sufficient and responsible for himself before he can take on parental responsibilities again. The maternal grandparents are currently caring for his two sons, and he hopes that their continued assistance will enable him to do that. He knows that he needs to work harder to find and take advantage of work opportunities and community resources in order to get back on his feet. He seems to understand that it will not be easy. However, he is currently involved in a relationship with a woman, Candice Owens, who he met a couple months before his re-arrest, and that relationship seems like it may put him in a better position to succeed. [4] She did not know about Mr. Moye-Gordon's past case until he was re-arrested last November. She is now very familiar with both his family responsibilities and criminal problems, and continues to support him. She works for a management and staffing company. Mr. Moye-Gordon is planning to live with her when he returns from the community, at least until he can make arrangements to get his own apartment. She is supportive of that plan, and has indicated to counsel that he can live with her when he is released. Thus, he will not have to worry about a roof over his head or food in the refrigerator when he comes home, which is something that was front and center in his life the last time. She also has some job prospects and referrals she is providing to him so he can start applying for jobs when he gets to a residential reentry center (RRC), and has been discussing with him the need to become stable and responsible for himself before seeking

[3] Defendant tried to enlist the help of Probation to try to find housing, but those efforts were unsuccessful as most housing assistance programs will provide assistance getting into an apartment, but the defendant needs to have documented employment showing that he would be able to pay the rent going forward, which defendant was unable to provide.

[4] Counsel has spoken with Ms. Owens numerous times over the past year, and she seems firmly committed to supporting Mr. Moye-Gordon's rehabilitation and supervision compliance. She is already firmly in his corner and very supportive of him as his serves his prison sentence. She plans to attend the hearing on violation and will be available if the Court has any questions for her.

custody of his sons. He acknowledged to counsel that he tried to take on too much under his circumstances, and that he knows he has to take the time to become stable before he can be of any help to his sons, and he is starting to re-think his priorities so he can deal with his life issues much better this time.

**IMPORTANT SENTENCING ISSUES & SENTENCING RECOMMENDATION**

As the Court will recall, Mr. Moye-Gordon has significant rehabilitative needs. The Court and counsel hoped he might be accepted into the Court's Intensive Reentry Program, but unfortunately he was not accepted. Moreover, in spite of the loss of his mother while he was serving his sentence, he did quite well when he returned to the community. The initial probation report noted significant compliance with his conditions, except for some marijuana use. At his reentry progress hearing on August 5, 2025, probation informed the court that he was doing pretty well except for the marijuana use. Probation also noted that he was working, but due to his conviction he had only been able to find work for a carpentry company "off the books". In addition, he was supposed to start the Georgetown Pivot program in the fall. However, when the mother of his two sons was arrested in August, things quickly changed.

Mr. Moye-Gordon felt the responsibility to try to step up and care for his sons, but he did not have the experience or resources to do that. He had to forego work, and was forced to sleep in shelters and/or try to find other women to stay with. It was not long before the wheels fell off, and he began to recidivate. It was counsel's understanding that Probation tried to help him with housing assistance, but since he did not have traditional work and paystubs, he was not eligible for any housing assistance programs at the time.

As the initial re-entry progress hearing reflected, when Mr. Moye-Gordon returned to the community in 2025, he was largely compliant and was demonstrating a commitment to do things right. Sadly, and unfortunately for him, life happens and things became extraordinarily difficult.

Yet, since his re-arrest, he seems to have used his time in try to continue his rehabilitative journey. He took advantage of the limited resources available to him in jail, and continues to learn more about the need to prepare himself for those inevitable obstacles. He participated successfully in the Bell Consulting Group academic offerings and Digital Literacy Course. [*See* Exhibit 1 - K. Younger Letter] He was also accepted into the Lead Up / Lead Out Program, which has been a very successful resource in recent years. [See attached Lead Up ! Letter] In addition, he earned a number of Certificates of Achievement for his work and studies following his re-arrest.

Mr. Moye-Gordon recognizes that it will not be any easier when he gets released this time, but he feels that he is better prepared for the inevitable setbacks. He is planning to try to use his time in the halfway house to get the necessary resources lined up so that he will be in a better position to overcome the obstacles this time. He has a good relationship with Ms. Owens, who now understands the past he is trying to overcome and is committed to trying to help him make better decisions now; he will have a home when he returns to the community this time; and he promises to do his best to show the Court he can succeed. Thus, he asks the Court for leniency so he can show the Court that he can do better, and so he can begin to get back in his sons' lives, albeit at a measured pace.

**CONCLUSION:**

As the Court is aware, Mr. Moye-Gordon has significant rehabilitative needs. To his credit he accepted responsibility for his re-arrest conduct, and has been trying to responsibly move forward in a positive way. He has now been in jail and prison for nearly a year, and will remain in prison following his revocation sentencing. As noted above, he has taken advantage of the resources that were available while incarcerated - participating in the Digital Literacy Program, the Lead Up / Lead Out Program, and earning a number of certificates of achievement. [*See* Exhibit 1 ] Accordingly, notwithstanding his relapse, he seems to be making progress.

Wherefore, Mr. Moye-Gordon, in his letter, humbly asked the Court to give him a second chance and consider a concurrent revocation sentence so that he can get back to his sons as soon as possible. In the alternative, he requests a low end guideline sentence with appropriate supervision conditions, hoping that he can work better with both Probation and community resources to put himself in a better position to succeed. Counsel submits that the recommended revocation sentence is both reasonable and appropriate under all the facts and circumstances in this case.

Respectfully submitted,

/s/ *Howard B. Katzoff*
Howard B. Katzoff (Bar # 348292)
717 D Street, NW Suite 310
Washington, D.C. 20004
(202) 783-6414
katzoffh@aol.com
Attorney for Ethan Moye-Gordon

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Memorandum was filed via the Electronic Court Filing System (ECF), causing a copy to be served electronically on government counsel and was served by electronic mail to United States Probation Officer Justin Suddeth this 5th day of November, 2026.

/s/ *Howard B. Katzoff*
Howard B. Katzoff